IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHIDAMBARAM CHIDAMBARAM and MEENA A. CHIDAMBARAM, : : : : Plaintiffs, : : v. : : KANNAPPAN SEKKAPPAN and T.D. SRINIVASAN, : : : Defendants. : | CIVIL ACTION NO. 1:13-CV-2958-RWS |

**ORDER**

This case is before the Court on Defendants' Motion to Compel Arbitration [4] and Plaintiffs' Motion to Remand to State Court [5].

**Background**

From August 2006 through August 2007, Defendants solicited Plaintiffs and others to invest in Reliant Metropolitan Developers Private Ltd. ("Reliant"), an Indian company handling two real estate development projects in Hyderabad, India. Plaintiffs allege that at the time of their introduction to Defendants and at all material times thereafter, Defendants "held themselves out to be, and were in fact, Directors, principals, owners, and/or controlling persons

of Reliant, with authority to act for and legally bind Reliant." (Compl., [1-1] ¶ 15.) During the solicitation period, Defendants held multiple internet and teleconference meetings with Plaintiffs, and emailed and met with them in person. According to Plaintiffs, numerous representations made by Defendants concerning the Reliant investment and Reliant's purported activities in India "were either untrue when made, were incomplete, or, when combined with other representations by Defendants, were materially misleading and false." (Compl., [1-1] ¶ 24.) The Complaint details many alleged misrepresentations made by Defendants during the solicitation period. (See Compl., [1-1] ¶¶ 25-28.) Plaintiffs allege that they "reasonably relied on the false and misleading representations of Defendants in making their investments in Reliant." (Compl., [1-1] ¶ 31.)

Ultimately, Plaintiffs made three separate investments in Reliant: $81,726 on January 24, 2007; $22,779 on January 25, 2007; and $49,726 on September 22, 2007. The first-round investments from January 2007 were memorialized in an investment agreement between Plaintiffs and Reliant

("Investment Agreement").[1] The Investment Agreement laid out the duties and responsibilities of the signatories. It also included an arbitration clause: "All disputes arising out of this agreement or in connection there with shall be settled by arbitration. The place of arbitration shall be Hyberabad, India." (Investment Agreement, [1-15] at 10 of 12.)

In June 2008, Defendants informed Plaintiffs that Reliant's first development project was not doing well due to falling land prices and cessation of new development projects in India. They told Plaintiffs that the project would "break even at best" and that Reliant was attempting to sell the first development property and invest the proceeds in Reliant's second project. However, in mid-2009, Defendants told Plaintiffs that the second project had title issues and Plaintiffs' investment in that property would be a total loss. In February 2012, Defendants conveyed to Plaintiffs that the first Reliant property had been sold for approximately 13% of its original purchase price and Reliant would attempt to "settle" Plaintiffs' investments based upon the sale. But,

---

[1] Plaintiffs never executed an agreement related to the second-round investment in September 2007. Thus, the Investment Agreement is the only contract at issue in this case.

3

according to Plaintiffs, Reliant did not sell the property and in fact still owned it at the time Plaintiffs filed suit in state court.

In July 2012, Defendant Sekkappan presented Plaintiffs with an offer: Reliant would repurchase Plaintiffs' interest in the company for approximately 12.85% of the initial cost of Plaintiffs' investments if Plaintiffs released all claims against Reliant and Defendants.  Plaintiffs enumerate several alleged misrepresentations made by Defendants and Reliant regarding this proposed settlement.  (See Compl., [1-1] ¶ 45.)  Plaintiffs allege: these misrepresentations "were made in an effort to further defraud Plaintiffs and other Reliant investors by trying to convince them that their investments had resulted in near total losses and that the settlement offers represented the best possible recoveries for Plaintiffs and other Reliant investors." (Compl., [1-1] ¶ 46.)

Plaintiffs claim that following the proposed settlement, they "first had reason, and did in fact begin, to suspect that Defendants had not been truthful with investors concerning the status of their investments." (Compl., [1-1] ¶ 49.)  They further allege, "[a]t or around the same time, Defendants refused Plaintiffs' request to see documentary evidence of the purported land transactions." (Compl., [1-1] ¶ 49.) "As a result of their suspicions, Plaintiffs

4

undertook to investigate the factual accuracy of certain of Defendants' representations . . . ." (Compl., [1-1] ¶ 50.) "Only after such investigation did Plaintiffs learn . . . that numerous of Defendants' prior representations made to Plaintiffs and other Reliant investors during Defendants' solicitation of investments in Reliant, as well as representations made after Plaintiffs acquired Reliant Interests . . ., were either untrue when made, incomplete, or, when combined with other representations by Defendants, materially misleading and false." (Compl., [1-1] ¶ 51.)

Plaintiffs allege, "[u]pon information and belief, Reliant is not an operating company, is not actively engaged in any business and has no source of revenue." Currently, the Reliant interests acquired by Plaintiffs have no market value and Plaintiffs have suffered the loss of their entire investment. Plaintiffs argue that their loss was proximately caused by Defendants' misrepresentations and omissions. Plaintiffs' claims against Defendants include: (1) common law fraud and fraudulent inducement, (2) negligent misrepresentation, and (3) violations of the Georgia RICO Act. Plaintiffs seek compensatory damages, punitive damages and attorneys' fees.

5

AO 72A
(Rev.8/82)

Plaintiffs filed suit against Defendants in Superior Court of Cobb County on January 25, 2013.  On May 13, 2013, Defendants filed a motion to dismiss or, in the alternative, to compel arbitration pursuant to the arbitration clause in the Investment Agreement.  After Defendants' motion was fully briefed by the Parties, the superior court held a hearing on the motion.  On July 15, 2013, the superior court denied Defendants' motion and ordered the Parties to mediate their dispute.  Defendants requested a certificate of immediate review, which the court did not grant.  Defendants subsequently retained new counsel.  On September 4, 2013, the Parties attended mediation, but that same day, Defendants removed the suit to this Court.

## Discussion

**I.  Plaintiffs' Motion to Remand for Procedurally Defective Removal and Lack of Subject Matter Jurisdiction**

A.  Procedural Defects in Defendants' Removal

Plaintiffs argue that Defendants' removal was defective for two reasons: (1) it was untimely under 28 U.S.C. § 1446(b)(1), and (2) Defendants failed to include the full record with their filing as required by 28 U.S.C. § 1446(a). Defendants counter that removal was proper under the Convention on the

6

Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. §§ 201, *et seq.* Section 205 of the Convention provides:

> Where the subject matter of an action or proceeding in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States . . . . The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205. According to Defendants, the Convention renders § 1446(b)'s 30-day removal deadline inapplicable, and they had a right to remove the matter at any time before trial. Further, they argue, their inadvertent omission of the superior court's summons of Defendant Srinivasan, which they later included in a supplement to their removal notice, is not grounds for remand. The Court agrees with Defendants.

Plaintiffs cite Velchez v. Carnival Corp., 331 F.3d 1207 (11th Cir. 2003), in support of their argument that removal was untimely. However, in Velchez, the Circuit Court explicitly avoided stating an opinion "as to the correctness of the district court's conclusion that 9 U.S.C. § 205 retains the thirty-day time

7

limit from § 1446(b)." 331 F.3d at 1209, n.3.  Defendants, on the other hand, cite multiple district court cases from this circuit holding that the 30-day limit does not apply to cases removed under the Convention.  (See Def.s' Resp., [10] at 6 of 31.)

The Court agrees with the conclusion and analysis of the district courts cited by Defendants.  See, e.g., Sheinberg v. Princess Cruise Lines, Ltd., 269 F. Supp. 2d 1349, 1352 (S.D. Fla. 2003) ("[T]his Court concludes that given the plain language of 9 U.S.C. § 205 regarding removal at any time before trial, the thirty day limit does not apply to removal under the Convention."); Azevedo v. Carnival Corp., No. 08-20518-CV, 2008 WL 2261195, at *4 (S.D. Fla. May 30, 2008) (noting courts in this district have "repeatedly rejected" the argument that removal under the Convention must occur within 30 days and concluding: "since § 205 of the Convention Act allows for removal of the case *at any time before trial*, and because the case was removed prior to trial, the notice of removal was timely") (emphasis in original).

If the Convention incorporates § 1446(b)'s 30-day time limit, the express language allowing for removal at any time before trial is meaningless.  Such a construction is contrary to settled principles of contract interpretation.  Thus,

8

the Court finds, based on the clear language of the Convention, Defendants' removal was timely under 9 U.S.C. § 205.

Plaintiffs' second argument for defective notice is also unpersuasive. Defendants admit they failed to include the superior court's summons of Defendant Srinivasan in their initial removal filing. However, they note, the original filing did contain a signed Acknowledgment of Service by Defendant Srinivasan. Further, they cured their mistake by filing a Supplement of Appendix to Defendants' Notice of and Petition for Removal [8].

The Eleventh Circuit has found that failure to include all lower-court papers with a removal filing is not an incurable defect mandating remand. FDIC v. N. Savannah Prop.s, LLC, 686 F.3d 1254, 1257 n. 1 (11th Cir. 2012). According to the Circuit Court, such an omission is "merely modal and formal and [is] completely without effect upon . . . removal, if the case is in its nature removable . . . ." Id. (quotations and citation omitted). Any papers and proceedings lacking from the original removal record "may be later supplied." Id. (quotations and citation omitted). Thus, the Court will not exercise its discretion to remand based on this single omission from Defendants' original removal filing.

9

B.    Lack of Subject Matter Jurisdiction

Next, Plaintiffs argue that remand is required because the Investment Agreement "does not provide a basis for federal jurisdiction under the Convention or otherwise." (Pl.s' Br., [5-1] at 13 of 28.) Plaintiffs argue: "the agreement does not satisfy the Convention's mandatory prerequisite of a written agreement *between the parties* requiring arbitration of *plaintiffs' claims against defendants*."[2] (Pl.s' Br., [5-1] at 13-14 of 28 (emphasis in original).) According to Plaintiffs, the Convention does not apply to this matter because the Investment Agreement containing the arbitration clause was executed by Plaintiffs and Reliant, not Defendants, and Plaintiffs' tort claims against Defendants are not dependent upon the Investment Agreement. (Pl.s' Br., [5-1] at 14-23 of 28.)

Defendants respond that they, as agents of Reliant, may enforce the arbitration clause on Reliant's behalf or, alternatively, they may enforce the

---

[2] Section 202 of the Convention provides: "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial . . . falls under the Convention." 9 U.S.C. § 202. Under Section 203, "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

AO 72A
(Rev.8/82)

clause under the principle of equitable estoppel.  Further, they assert, the arbitration clause is broad enough to encompass Plaintiffs' tort claims.  Again, the Court agrees with Defendants.

It is undisputed that Defendants are not signatories to the Investment Agreement.  Thus, an exception must be found to the general rule that waiver of the right to trial requires an express agreement between the parties.  Southern Mills v. Nunes, No. 1:10-CV-3340-RWS, 2011 WL 2358652, at *3 (N.D. Ga. June 9, 2011).  There are three limited exceptions recognized by the Eleventh Circuit, but only two are relevant to this inquiry.[3]  First, "under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided."  Id. (quotations and citation omitted).  Second, "equitable estoppel . . . allow[s] nonsignatories to a contract to compel arbitration."  Id. (quoting MS Dealer Serv. Corp. V. Franklin, 177 F.3d 942,

---

[3] The third exception relates to third-party beneficiaries to contracts containing arbitration clauses.  There does not appear to be any dispute that Defendants were not third-party beneficiaries under the Investment Agreement.

11

947 (11th Cir. 1999), *abrogated on other grounds by*, Arthur Andersen LLP v. Carlisle, 556 U.S. 624 (2009)).[4]

Under Georgia law, the doctrine of equitable estoppel allows a nonsignatory to compel arbitration under two circumstances. First, the doctrine applies "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." Order Homes, LLC v. Iverson, 685 S.E.2d 304 (Ga. Ct. App. 2009); accord MS Dealer, 177 F.3d at 947. Second, "application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Id.; accord MS Dealer, 177 F.3d at 947. Defendants rest their argument on the second circumstance.

---

[4] In Arthur Andersen, the Supreme Court held that federal courts should apply state law, not federal law, to determine whether a contract may be enforced by or against non-parties. 556 U.S. at 630-31. As Defendants note, the distinction makes no difference here because Georgia law on equitable estoppel is the same as the federal law applied in MS Dealer. See Order Homes, LLC v. Iverson, 685 S.E.2d 304, 310 (Ga. Ct. App. 2009) ("Arbitration is a matter of contract; therefore, a party cannot be forced to submit to arbitration if he has not agreed to do so. However, . . . nonsignatories to an agreement may have a right to compel arbitration under the doctrine of equitable estoppel . . . .").

12

The Court agrees that Plaintiffs have raised allegations of substantially interdependent and concerted misconduct by Reliant and Defendants.  The Complaint alleges that at all material times, Defendants were acting as agents and principals of Reliant "with authority to act for and legally bind Reliant." (Compl., [1-1] ¶ 15.)  Under traditional agency principles, as Defendants note, alleged misconduct by Reliant's agents may be imputed to Reliant.

Additionally, the Complaint contains allegations that Defendants and Reliant both acted to defraud investors.  For example, Plaintiffs allege: (1) "Reliant and/or its principals used funds invested by Plaintiffs and other Reliant investors for purposes other than those represented to Plaintiffs and other investors during Defendants' solicitation of investments;" and (2) "Contained within and as part of the proposed settlement documents, Defendants and Reliant made numerous representations to Plaintiffs (and presumably other Reliant investors) that were false, incomplete and/or misleading . . . ."; and (3) Defendants and Reliant offered to "settle" Plaintiffs' investments in exchange for Plaintiffs' release of all claims against Reliant and Defendants, which prompted Plaintiffs to investigate Reliant's business.  (Compl., [1-1] ¶¶ 28, 45, 49.)  Furthermore, as Defendants point out, all allegations regarding

13

Defendants' misconduct and losses suffered by Plaintiffs relate directly to Plaintiffs' investments in Reliant – an investment relationship that was memorialized in the Investment Agreement with Reliant.  Therefore, the Court finds that Defendants are permitted, under the doctrine of equitable estoppel, to enforce the arbitration clause.[5]

The remaining issue is whether the arbitration clause encompasses Plaintiffs' tort claims.  The clause reads: "All disputes *arising out of* this agreement or *in connection there with* shall be settled by arbitration.  The place of arbitration shall be Hyberabad, India."  (Investment Agreement, [1-15] at 10 of 12 (emphasis added).)  Thus, the crux of the inquiry is whether Plaintiffs' tort claims "arise out of" or are "connected with" the Investment Agreement.

The Eleventh Circuit has shed some light on the meaning of these operative terms in the context of arbitration clauses.  According to the Circuit

---

[5] Having found that the doctrine of equitable estoppel applies, the Court need not decide whether Defendants have authority to enforce the arbitration clause under an agency theory.  However, the Court is inclined to agree with Plaintiffs that Defendants have not established a sufficiently close relationship between them and Reliant such that the arbitration clause would be eviscerated if Defendants were not permitted to enforce it.  Compare Southern Mills, 2011 WL 2358652, at *3-4 (finding, under agency theory, that a nonsignatory was permitted to enforce an arbitration clause on behalf of the signatory where the nonsignatory was "the company's sole owner, member, and manager").

14

Court, "[t]he term 'arising out of' is broad, but it is not all encompassing.  In construing that same term to determine whether a dispute arises out of a contract, we have explained that the focus is on 'whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties.'"  Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1218 (11th Cir. 2011) (quoting Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001)).  Further, the court stated, "'[a]rising out of' requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract." Id.  Similarly, "'[c]onnected with' denotes the necessity of some direct connection; if it did not, the term would be meaningless." Id. at 1219.

    The signatories' contractual duties are laid out in the Investment Agreement.  Under the Agreement, Reliant agreed to, among other things: minimize and mitigate investors' losses to the extent possible; act fairly, transparently, and without negligence; appoint qualified staff and auditors; obtain necessary approvals, consents and licenses from competent authorities for the development projects; retain qualified and experienced outside counselors and consultants; and take steps to comply with rules, regulations,

15

and statutes generally and relating to specific development projects. (Investment Agreement, [1-15] at 8-9 of 12.)  Plaintiffs' allegations, although characterized as misrepresentations by Defendants, appear to be directly related to the fulfilment of these contractual obligations: "Reliant did not deploy satisfactory due diligence processes" or risk management processes; "Reliant did not retain or partner with appropriate Indian business partners;" Reliant did not utilize transparent and modern business practices to ensure security of Plaintiffs' investments; Reliant failed to perform adequate legal reviews and due diligence and therefore the development properties had title defects and/or other legal issues.  (See Compl., [1-1] ¶ 28.)

Based on these allegations in the Complaint and the reasons set forth above regarding application of the equitable estoppel doctrine, the Court finds that Plaintiffs' tort claims arise out of and are connected with the Investment Agreement.  Thus, the Convention applies to the Agreement and the Court has subject matter jurisdiction pursuant to 9 U.S.C. § 203.  Accordingly, Plaintiffs' Motion to Remand is **DENIED.**

16

## II.   Defendants' Motion to Compel Arbitration

Defendants argue, and Plaintiffs do not dispute,[6] that the Court may dissolve the superior court's order denying Defendants' motion to compel arbitration. Indeed, under 28 U.S.C. § 1450, "[a]ll injunctions, orders, and other proceedings had in [an] action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." Defendants argue that the superior court's decision was erroneous and should be reconsidered. The Court agrees that reconsideration is warranted.

There is a strong federal policy in favor of arbitration. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (quotations and citation omitted). Further, "[t]he goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which

---

[6] In response to Defendants' motion to compel arbitration, Plaintiffs incorporate the arguments and authority cited in their motion to remand. ([5], [6].)

17

agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n. 15 (1974).

A district court must order arbitration under the Convention, "unless: (1) the four jurisdictional prerequisites are not met, or (2) one of the Convention's affirmative defenses applies." Bautista v. Star Cruises, 396 F.3d 1289, 1294-95 (11th Cir. 2005).  The former requirement is at issue here.  The four jurisdictional prerequisites are: (1) an agreement in writing within the meaning of the Convention, (2) which provides for arbitration in a signatory territory, (3) arises out of a legal commercial relationship and (4) has at least one signatory who is not an American citizen.  Id. at 1295 n. 7.  There is no dispute that India is a signatory country, that the Investment Agreement and arbitration clause arose out of a commercial relationship, and that Reliant is not an American citizen.

Thus, the remaining issue is whether there is an agreement that falls under the Convention.  The Parties' arguments on this question mirror those put forth regarding the Court's subject matter jurisdiction.  (See Part I.B., supra.) Based on the reasons stated above, the Court finds there is an agreement within

18

the meaning of the Convention.  Defendants are permitted to enforce the arbitration clause under the doctrine of equitable estoppel and the clause encompasses Plaintiffs' tort claims.  Consequently, the Convention's jurisdictional prerequisites are satisfied.  The superior court's order denying Defendants' motion to compel arbitration is **DISSOLVED** and the motion is now **GRANTED.**

## Conclusion

Based on the foregoing, Defendants' Motion to Compel Arbitration [4] is **GRANTED** and Plaintiffs' Motion to Remand [5] is **DENIED.**  These proceedings are **STAYED** until the arbitrator resolves the underlying arbitration.

**SO ORDERED**, this 20th day of May, 2014.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)